**IN THE COURT OF APPEALS OF IOWA**
No. 14-0685
Filed May 6, 2015

**IN RE THE MARRIAGE OF DARIN L. CROOKS
AND JENISHA RAE GARDEN**

**Upon the Petition of
DARIN L. CROOKS,**
     Petitioner-Appellant,

**And Concerning
JENISHA RAE GARDEN,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Floyd County, James M. Drew, Judge.


A father appeals a district court order denying his petition to modify physical care and visitation of his children. **AFFIRMED.**


Judith O'Donohoe of Elwood, O'Donohoe, Braun, White, L.L.P., Charles City, for appellant.

Kristy B. Arzberger of Arzberger Law Office, Mason City, for appellee.


Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, P.J.**

A father appeals a district court order denying his application to modify the physical care and visitation provisions of a prior stipulated modification decree.

### I. Background Facts and Proceedings

Darin Crooks and Jenisha Garden divorced after seven years of marriage. A stipulated dissolution decree entered in 2006 provided for joint physical care of their children, born in 2001 and 2004.

In 2008, Crooks applied to modify the joint physical care provision of the decree. The parents signed a second stipulation allowing Garden to assume physical care of the children, subject to liberal visitation with Crooks. The district court approved the stipulation.

Four years later, Crooks again sought a modification of the decree to provide for reinstatement of the joint physical care arrangement. Following a hearing, the district court denied the application as well as a post-trial motion filed by Crooks. Crooks appealed.

### II. Modification of Physical Care

Crooks contends the district court applied "too heavy a burden" on him. In his view, he "was not asking to shift physical care away from [Garden] but merely to reinstate it from the original divorce decree." His assertion contravenes our modification standards, which require the applicant to establish "a substantial change in the circumstances of the parties since the entry of the decree *or of any subsequent intervening proceeding that considered the situation of the parties upon application for the same relief*." *In re Marriage of Maher,* 596 N.W.2d 561, 564-65 (Iowa 1999) (emphasis added). Under this standard, Crooks's burden

began with the 2008 order approving the stipulated modification rather than the provisions of the original dissolution decree. He was required to show a substantial change of circumstances after Garden received physical care of the children. He also was required to prove "an ability to minister more effectively to the children's well-being." *See In re Marriage of Rierson*, 537 N.W.2d 806, 807 (Iowa Ct. App. 1995).

In concluding Crooks failed to satisfy this burden, the district court reasoned as follows:

> [Crooks] is a motivated father who wants to be with his children as much as possible. For that he should be commended. However, in his zeal to obtain equal parenting time he seems to have overlooked the obvious: the children are excelling under the current arrangement. The court cannot recall a case in which more positive evidence was presented regarding the children at issue.[1] Unlike the typical modification case, it is unlikely that there is room for improvement with these children. Although [Crooks] desires to have more time with the children there is no evidence to suggest that a change is needed for the children's sake.
>
> Even if the children were not doing so well the court would be unwilling to order joint physical care in this case. . . . It must be understood that joint physical care is more than dividing the days on the calendar. It requires a mother and father to work together and to be "on the same page" when it comes to parenting. Given the lack of respect, lack of communication, and vitriol that exists between the parents, the court could not give serious consideration to a request for joint physical care even if a change were warranted.

Crooks complains this "decision, given the amount of evidence, is brief." As is ours. On our de novo review, we are convinced both parents have lost sight of the forest for the trees. The parents stipulated Garden would exercise physical care of the children subject to liberal visitation with Crooks. As the

---

[1] The district court in a footnote stated, "Rather than litigating, Darin and Jenisha should be celebrating the fact that their children are doing so well. These children are exceptional. Most divorced parents aren't so fortunate."

district court explained, the children flourished under the arrangement. Certainly, the children deserve credit for making the best of their time with each parent, notwithstanding the parents' animosity towards each other. But Garden also afforded them stability and structure during a period when Crooks was experiencing employment upheavals. While Crooks had regained employment by the time of the modification hearing, he failed to establish he could improve upon the home environment Garden provided.

In reaching this conclusion, we have considered Crooks's assertion that most of the vitriol the district court observed came from Garden and her witnesses. To the contrary, he too harbored resentments over what he concedes were "fairly trivial issues." His unwillingness to set aside these grievances for the good of the children cut against his claim of superior caretaking ability.

Finally, we have considered the older child's stated preference to spend equal time with each parent. A child's preference is afforded less weight in a modification proceeding than in an original action. *In re Marriage of Behn*, 416 N.W.2d 100, 102 (Iowa Ct. App. 1987). On our de novo review, we believe this mature and sensitive teenager would have settled for mutual respect among the adults in both families and consideration of her views on activities of daily living. Her otherwise loving and well-meaning parents are fully capable of accomplishing this goal under the existing custodial arrangement.

### III. Modification of Visitation

Crooks alternatively seeks modification of the visitation schedule. We recognize the burden for modifying visitation provisions is lighter than for modification of custody. *In re Marriage of Salmon*, 519 N.W.2d 94, 95-96 (Iowa

Ct. App. 1994) (stating a parent seeking to modify visitation must only establish "that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children"). However, as the district court noted, "[T]here is nothing to indicate that the children . . . are suffering any ill effects from the existing schedule. In fact, one must assume the opposite is true based on the children's development." We conclude the district court's refusal to modify visitation was equitable.

### IV. Attorney Fees

Crooks contends the district court should not have ordered him to pay $4000 towards Garden's trial attorney fees. The award was discretionary. *In re Marriage of Sullins*, 715 N.W.2d 242, 256 (Iowa 2006). We discern no abuse of discretion.

Garden requests appellate attorney fees. Again, an award is discretionary. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Because Garden prevailed, we order Crooks to pay $1000 towards her appellate attorney fee obligation, in addition to the costs of the action.

**AFFIRMED.**