In re the MARRIAGE OF Jeanne M. HAZEN and Timothy E. Hazen.

Upon the Petition of Jeanne M. Hazen, Petitioner–Appellee,

And Concerning Timothy E. Hazen, Respondent–Appellant.

No. 08–2040.

Court of Appeals of Iowa.

Oct. 21, 2009.

Jeffrey S. Bittner of Jeff Bittner Law, P.C., Davenport, for appellant.

Dennis D. Jasper, Bettendorf, for appellee.

Considered by SACKETT, C.J., and EISENHAUER and DOYLE, JJ.

SACKETT, C.J.

Timothy E. Hazen appeals, challenging the economic provisions of the decree dissolving his marriage to Jeanne M. Hazen. We affirm as modified.

**I. BACKGROUND.** Jeanne and Timothy were married in September of 1986. At the time of trial in September of 2008, Jeanne was forty-seven years of age and Timothy was fifty years of age. Both parties graduated from high school but do not have any further formal education. One child, a son, was born to the marriage. At the time of trial he was nineteen and not in school, so his support was not an issue. Neither party brought any significant property to the marriage. Timothy has been employed throughout the marriage.

Jeanne was employed at the time of the marriage and at the time of trial. She had left the workplace for a period after their son was born to assume child care and household responsibilities. She has held several jobs since that time. At the time of trial her annual income was about $20,000 from her job as a teller at the Family Credit Union. Timothy's was $35,-000 [1] from his employment by the City of Davenport, Iowa.

The parties had equity in their home, household goods, vehicles, and pension accounts. These assets were substantially acquired from the parties' earnings. During the marriage Jeanne received a $10,000 personal injury settlement which was spent. The parties had the mortgage on their home, debt on their vehicles, and substantial credit card debt. They made their own division of the household goods, and the balance of the assets and liabilities were valued and divided by the district court.

The district court determined the parties' home was worth about $100,000 and they had $64,000 in equity. The home was awarded to Jeanne and she was ordered to assume the $33,000 mortgage. Jeanne was also awarded (1) a motor vehicle in which the district court found there was a $4600 equity,[2] (2) her retirement accounts which the district court valued at $9254, (3) a savings account valued at $100, (4) cemetery plots that were not valued by the district court,[3] and (5) one-half of Timothy's IPERS retirement.[4] Jeanne was

---

1. His income could be several thousand dollars more or less depending on Timothy's overtime pay.

2. Jeanne was ordered to pay the debt on the vehicle.

3. Timothy's financial affidavit valued them at $500.

4. Timothy's financial affidavit showed the account to be $12,000, but we assume this only represents the amount of Timothy's contribution and does not represent the future benefits. IPERS is a defined-benefit plan. *See* Iowa Code § 97B.49A(3) (2007). The plan uses a "percentage of earnings per year of service formula, which provides a benefit that is related to the employee's earnings and

also ordered to pay $4782 on a U.S. Bank credit card and an obligation to Carpetland which the parties stipulated was $815.

Timothy was awarded (1) a motorcycle valued at $4000, (2) his savings account valued at $100, (3) a motor vehicle the court valued at $5580, (4) a tax refund check in the amount of $1862, (5) one-half of his IPERS account, and (6) his entire Baird 401k account valued at $12,302. He was ordered to pay $4782 of the U.S. Bank credit card. The card was in Jeanne's name, consequently Timothy was required to pay Jeanne the $4782 at $250 a month until paid. No interest was to accrue unless a payment was over ten days late. He was also ordered to pay $2400 on the Wells Fargo credit card, and the Sears account, which the parties stipulated was $1700. Using the trial court's values for property and its determination of debt, the net result of this division was that Jeanne received values of $72,357[5] and Timothy received values of $14,962.[6] Timothy was also ordered to pay $3500 towards Jeanne's trial attorney fees and the costs of the action in the amount of $182.93.

The district court also awarded Jeanne alimony of $350 a month for forty-eight months, and one dollar a year until she qualifies for and begins receiving Social Security benefits and Medicaid.[7] Timothy was ordered to provide Jeanne vision insurance under his current policy through COBRA for the maximum time allowed.

Timothy filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) contending that the division of property, the awarding of alimony, and the imposition of attorney fees was not equitable and asked that the decree be modified. The district court, in ruling on the motion, indicated in her trial notes she originally intended to award Jeanne $1000 a month alimony but awarded $334, a lesser sum, to offset the

length of service." *In re Marriage of Benson,* 545 N.W.2d 252, 254–55 (Iowa 1996). The plan should not be valued or divided based on the current value of Timothy's contributions to the plan over the years of the marriage. *See In re Marriage of Sullins,* 715 N.W.2d 242, 249–50 (Iowa 2006). The district court provided that the IPERS should be divided equally and that it would sign a QDRO accordingly. The method of division was not specified but we presume that it will be divided in a manner where Jeanne will receive fifty percent of a fraction of Timothy's pension or pension payments where the numerator of the fraction is the number of years he contributed to IPERS during the marriage, and the denominator of the fraction is the total number of years during which benefits were accumulated prior to being paid. *See In re Marriage of Scheppele,* 524 N.W.2d 678, 680 (Iowa Ct.App. 1994); *In re Marriage of Curfman,* 446 N.W.2d 88, 90 (Iowa Ct.App.1989). Consequently valuation of Timothy's IPERS account is not necessary.

5. This figure includes assets assigned to Jeanne, including the net value of the house ($64,000), the net value of the Hyundai motor vehicle ($4600), her savings account ($100), and the combined value of her retirement accounts ($9254). This figure includes the liabilities assigned to Jeanne, including her share of the U.S. Bank credit card debt ($4782), and the debt to Carpetland ($815). This figure does not include her one half share of the IPERS account.

6. This figure includes assets assigned to Timothy, including the value of the Dodge motor vehicle ($5580), and motorcycle ($4000), the value of his Baird 401k account ($12,302), his savings account ($100), and the tax refund ($1862). This figure includes the liabilities assigned to Timothy, including his share of the U.S. Bank credit card debt ($4782), the Wells Fargo debt ($2400), and the Sears debt ($1700). This figure does not include his one-half share of the IPERS account or his obligation to contribute to Jeanne's attorney fees ($3500) and pay the costs of the action ($182.93).

7. We assume that the court meant Medicare benefits.

unequal property division.[8] The court modified the decree by adding the following language:

> The court finds that alimony in the amount of $1,000 per month for four years would rehabilitate Jeanne during the time of marital debt reduction and beyond to establish credit.

The court then changed the spousal support from $350 a month to $334 a month for forty-eight months and one dollar per year thereafter, until such time as Jeanne qualified for and begins receiving Social Security and Medica[re] benefits.

**II. FINANCIAL PROVISIONS OF THE DECREE.** Timothy contends the financial provisions of the decree are not equitable and favor Jeanne. He contends that aside from the IPERS which was divided, Jeanne received substantially more assets than he did. He contends this is not equitable or in accord with existing case law.

■■■ Our standard of review in appeals from dissolution decrees is de novo. Iowa R.App. P. 6.4; *In re Marriage of Campbell*, 623 N.W.2d 585, 586 (Iowa Ct. App.2001). Iowa is an equitable division state. *In re Marriage of Robison*, 542 N.W.2d 4, 5 (Iowa Ct.App.1995). An equitable division does not necessarily mean an equal division of each asset. *Id.* Rather, the issue is what is equitable under the circumstances. *In re Marriage of Webb*, 426 N.W.2d 402, 405 (Iowa 1988). The partners in the marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Russell*, 473 N.W.2d 244, 246 (Iowa Ct.App.1991). Iowa courts do not require an equal division or per-

centage distribution. *Id.* The determining factor is what is fair and equitable in each circumstance. *In re Marriage of Swartz*, 512 N.W.2d 825, 826 (Iowa Ct.App. 1993). The distribution of the property should be made in consideration of the criteria codified in Iowa Code section 598.21(5) (Supp.2007). *See In re Marriage of Estlund*, 344 N.W.2d 276, 280 (Iowa Ct.App.1983). While an equal division of assets accumulated during the marriage is frequently considered fair, it is not demanded. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007).

■■■ In assessing a claim for spousal support, we consider the property division and spousal support provisions together in determining their sufficiency. *See In re Marriage of Lattig*, 318 N.W.2d 811, 815 (Iowa Ct.App.1982). An alimony or spousal support award is justified when the distribution of the assets of the marriage does not equalize the inequities and economic disadvantages suffered in marriage by the party seeking the support and there also is a need for support. *In re Marriage of Weiss*, 496 N.W.2d 785, 787–88 (Iowa Ct.App.1992). That said, we do not believe it is wise or equitable to give the party requesting spousal support the majority of the assets accumulated during the marriage, and then reduce the spousal support the other party is to pay to allegedly compensate for the fact he or she received substantially less property.

■■■ There are important differences between property division and alimony. It is anticipated that spousal support will be paid from future income whereas property distributions are designed to sort out property interests acquired in the past.[9] A

---

8. The court noted in its ruling on the motion to enlarge and modify its findings, that the award of $350 listed in its findings was incorrect and it intended the amount to be $334.

9. Under traditional concepts,
   alimony was expressly forward-looking: its purpose was to provide for a dependent spouse's future needs, not to compensate a

property division divides the property at hand and is not modifiable, Iowa Code § 598.21(7), while a spousal support award is made in contemplation of the parties' future earnings and is modifiable. *Id.* § 598.21C (2007). Timothy's future income can change or disappear and his alimony obligation can decrease or be eliminated. Furthermore, spousal support has different income tax implications than a property settlement. *See* I.R.C. §§ 62(a)(10), 215(a). It is true that some distinctions between property division and alimony have become blurred with the growth of equitable distribution principles. Jana B. Singer, *Divorce Obligations and Bankruptcy Discharge: Rethinking the Support/Property Distinction*, 30 Harv. J. on Legis. 43, 73 (1993). However, disregarding the differences between property division and alimony when determining the economic provisions of a divorce decree may cause an inequitable result.

■■■■ We find an inequitable result occurred in this case. Although the court's method of reducing Timothy's alimony payment in lieu of awarding him a comparable share of the parties' assets appears equitable in theory and under the district court's calculation, as a practical matter, the result is substantially lopsided. Under the current decree, Timothy leaves the marriage without any benefit of the equity in the house acquired through the parties' joint efforts over the course of their twenty-two year marriage and must pay alimony. Under some circumstances, when division of property is impractical, a higher spousal support award is warranted. Spousal support provides an excellent

opportunity to balance equities where the parties have few assets and yet one partner, through joint efforts, leaves the marriage with a substantially higher income than the other. *See in re Marriage of Mouw*, 561 N.W.2d 100, 102 (Iowa Ct.App. 1997) (awarding wife $2000 a month alimony where education husband received during marriage resulted in his having substantial income potential). That clearly is not the case here. The parties have assets and through their division Jeanne will receive a share of the property acquired by joint efforts.

This is a marriage that calls for a nearly equal division of the accumulated assets. *See In re Marriage of McLaughlin*, 526 N.W.2d 342, 344 (Iowa Ct.App.1994); *see also In re Marriage of Russell*, 473 N.W.2d 244, 246–47 (Iowa Ct.App.1991) (making equal division in twenty-one year marriage where neither party brought substantial assets or debts into marriage); *see also In re Marriage of Byall*, 353 N.W.2d 103, 106 (Iowa Ct.App.1984) (affirming nearly equal division of accumulated assets when both individuals were healthy and currently employed but neither had made extraordinary sacrifices, nor did either leave the union under a substantial disadvantage).

We modify to provide that the house shall be owned by the parties as tenants in common. If no agreement is reached for one party to buy the other out within sixty days of the filing of this opinion, then it should be listed for sale,[10] and the proceeds of the sale, after the payment of the mortgage, taxes, and expenses of the sale, should be divided between the parties.

---

spouse for contributions made during marriage. Property awards, by contrast, were oriented toward the past: their purpose was to unscramble the respective ownership interests of each spouse in property acquired during marriage.

Jana B. Singer, *Divorce Obligations and Bankruptcy Discharge: Rethinking the Support/Property Distinction*, 30 Harv. J. on Legis. 43, 68–69 (1993).

10. Both parties wanted the house.

Assuming splitting the net proceeds results in each party acquiring the value of one-half of the equity in the home at the time of trial, each party would obtain $32,000. We also modify to require Timothy to be responsible for $8000 of the U.S. Bank credit card debt and Jeanne to be responsible for $1564 of the debt. The U.S. Bank card is in Jeanne's name consequently we believe it equitable to impose a lien of $8000 against Timothy's interest in the family home and we modify the decree accordingly. Until the lien is discharged we affirm the district court's provision that he pay Jeanne $250 a month toward this debt under the terms ordered by the district court. Making these adjustments to the property distribution would leave Jeanne with $43,575 in assets and Timothy with $43,744.

### III. SPOUSAL SUPPORT.
Timothy contends he should not have been ordered to pay alimony. Spousal support is provided for under Iowa Code section 598.21A. Whether spousal support is justified is dependent on the facts of each case. *See In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Entitlement to spousal support is not an absolute right. *Id.*

We look not only at the parties' earnings but also at his or her earning capacity as directed by section 598.21A. *See In re Marriage of Friedman*, 466 N.W.2d 689, 693 (Iowa 1991). Consequently, if both parties are in reasonable health, as here, they need to earn up to their capacities in order to pay their own present bills and not lean unduly on the other party for support. *See In re Marriage of Wegner*, 434 N.W.2d 397, 399 (Iowa 1988).

We believe an award of spousal support is justified here primarily because Jeanne's earnings are less than Timothy's. Unlike the district court, we believe alimo-ny of $1000 a month is not supported by the facts.

Timothy has greater earnings than does Jeanne and she spent some time outside the job market. She, however, is able to be, and is, gainfully employed. We recognize that Jeanne was diagnosed with multiple sclerosis in 1988, though at the time of the hearing she was taking no medication and was relatively symptom free. We believe the $334 ordered by the district for four years is fair, when coupled with the one dollar a year thereafter so as to allow modification if Jeanne's health problems prevent or limit her ability to be employed. We affirm the alimony award.

### IV. ATTORNEY FEES.
Timothy contends the district court should not have awarded attorney fees. An award of attorney fees is not a matter of right, but rests within the court's discretion. *In re Marriage of Miller*, 532 N.W.2d 160, 163 (Iowa Ct.App.1995). The court should make an attorney fee award that is fair and reasonable in light of the parties' financial positions. *Id.* To overturn an award, the complaining party must show the district court abused its discretion. *In re Marriage of Gonzalez*, 561 N.W.2d 94, 99 (Iowa Ct.App.1997). Having modified the decree, we affirm the award of attorney fees. Timothy is receiving about one-half of the property and does have larger earnings.

We award no appellate attorney fees and order that costs on appeal be paid by the parties equally.

**AFFIRMED AS MODIFIED.**